COMMONWEALTH *vs*. WILLIAM A. KELLEY. October 18, 1985. *Evidence*, Other offense, Relevancy and materiality. *Practice, Criminal*, Instructions to jury, Failure to make objection.

The defendant was convicted of armed robbery (G. L. c. 265, § 17) and kidnapping (G. L. c. 265, § 26) after a jury trial in the Superior Court. On appeal, he claims: (1) that the judge erred when he permitted the Commonwealth to introduce in evidence portions of a statement that he had given to the police about an incident that had occurred the day after the crime for which he was on trial, and (2) that the judge's instructions on joint venture were erroneous in that they usurped the fact-finding function of the jury.

We summarize the following facts that could have been found by the jury as background for our analysis of the issues. We include in our summary some facts taken from a statement given by the defendant which was admitted at trial without objection.

On the evening of November 30, 1981, the defendant drove to a country club which had a bar known to be frequented by homosexuals. The defendant was accompanied by one O'Neill and another individual known as "Jamie." Their purpose was to "hassle a couple of [homosexuals]." The defendant and O'Neill entered the bar together, and Jamie entered the bar alone. The defendant and O'Neill sat together at one table while Jamie sat alone at a nearby table. The victim, a waiter at the country club, after completing his duties went to the lounge area for a drink. He struck up a conversation with Jamie and accepted his invitation to go outside to share a marihuana cigarette. Jamie led the victim to the defendant's automobile, and both individuals sat in the back seat to share the cigarette. A short time later the defendant and O'Neill entered the automobile, the defendant sitting

---

in the driver's seat, with O'Neill beside him. O'Neill produced a pistol and trained it upon the victim and instructed the defendant to drive. During the drive, the victim was subjected to threats, insults, and a beating. He was robbed of a jacket and some money, which was divided between O'Neill and the defendant.

It was the Commonwealth's theory at trial that the defendant was engaged in a joint venture with O'Neill and Jamie on November 30, 1981. The defendant admitted that he was present but denied knowing that O'Neill planned to commit a robbery. To rebut the defendant's contention, the Commonwealth asked the judge to allow in evidence portions of the defendant's statement concerning a December 1, 1981, incident. In that statement the defendant admitted that on the evening after the November 30 incident he and O'Neill returned to the country club to "get them [somebody in the bar] out to the car . . . and then . . . rob them out in the car." The Commonwealth contended that the statement was admissible to show the defendant's knowledge and intent in relation to the November 30, 1981, incident. The defendant argued that the evidence was unfairly prejudicial. The judge ruled that the evidence was admissible on the issue of the defendant's intent and participation in a joint venture on November 30, 1981. He gave limiting instructions to the jury both at the time the statement was admitted and in his instructions to the jury. There was no error.

"[W]hen the evidence of other crimes is not too remote or is connected with the facts of the case, it may be admitted to establish knowledge, intent, motive, method, or other facts relevant to proof of the crime charged." *Commonwealth* v. *Brown*, 389 Mass. 382, 384 (1983). Here, the circumstances revealed by the statement of the defendant as to a planned robbery on December 1, 1981, concerned an incident which was remarkably similar to those of the November 30 robbery for which he was being tried. Both events involved trips by the defendant and O'Neill to the same country club, with the conceded intention to "hassle a couple of [homosexuals]" on the first occasion, and to rob someone on the second evening. The two events were closely linked both in time and location. Such evidence does not lose its relevance simply because it occurred after the incident in question. See *Commonwealth* v. *Pickles*, 364 Mass. 395, 400 (1973); *Commonwealth* v. *Gallison*, 383 Mass. 659, 662-664, 666 (1981). See also *Commonwealth* v. *Schoening*, 379 Mass. 234, 237-238, 242 (1979). Moreover, "[t]he judge minimized any prejudicial effect of the admission of the evidence of other crimes by his . . . interruption of the trial to instruct the jury to limit their consideration of the challenged evidence." *Commonwealth* v. *Lovell*, 6 Mass. App. Ct. 172, 178 (1978). There was no abuse of discretion here.

The defendant also contends that the judge's instructions on joint venture usurped the fact-finding function of the jury, despite a clarification given at the defendant's request. We note that, while the defendant did object to the original instruction, he did not object to the supplemental one.

Even if the judge's original instruction concerning the termination of a joint venture could have been misconstrued by the jury in the manner

suggested by the defendant, the judge's clarification on this subject in terms suggested by defense counsel corrected any possible confusion or misunderstanding. "The failure to renew objections after the supplementary instruction and the acquiescence in the amended charge by his counsel leaves the defendant 'in no position to contend that the further instructions were inadequate'." *Commonwealth* v. *Sheffield*, 10 Mass. App. Ct. 863, 864 (1980), quoting from *Betty Corp.* v. *Commonwealth*, 354 Mass. 312, 321 (1968). In any event, there was no substantial risk of a miscarriage of justice.

*Judgments affirmed.*

The case was submitted on briefs.
*Stephen J. McLaughlin* for the defendant.
*William C. O'Malley*, District Attorney, & *Robert P. Snell*, Assistant District Attorney, for the Commonwealth.