Rubin, J.
(dissenting in part and concurring in part). I join so much of the court’s opinion as affirms the defendant’s convictions. Count 1, however, which charged the defendant with intimidation of a person furthering a court proceeding in violation of G. L. c. 268, § 13B, was properly dismissed by the trial judge on the basis of the plain language of the jurisdictional statute, *398 G. L. c. 218, § 26, language consciously and deliberately adopted by the Legislature. Because we are without power to ignore or amend that language, I respectfully dissent from that portion of the court’s opinion reversing the trial judge’s order of dismissal.
The plain language of G. L. c. 218, § 26, as amended through St. 1996, c. 393, § 1, says that the District and Boston Municipal Courts have jurisdiction over prosecutions for “intimidation of a witness or juror under section thirteen B of chapter two hundred and sixty-eight,” not over cases of intimidation of any other individuals brought under that section. Likewise, the criminal complaint in this case explicitly says, “Superior Court jurisdiction, however, District Court has final jurisdiction for a witness or juror under G. L. c. 218, § 26.” Relying on the plain language of the statute, the Boston Municipal Court judge properly dismissed count 1. Where the language of the statute is plain, that should be the end of our enquiry. If the Legislature chooses to amend the statute, of course it has power to do so.
Even were the statute ambiguous, however — and in the end the majority acknowledges it is not — there is conclusive evidence that the Legislature intended to give the District and Boston Municipal Courts jurisdiction only over intimidation cases made criminal by G. L. c. 268, § 13B, where the victim was a witness or juror.
To begin with, the question is the meaning of the 1996 Act that inserted the relevant words in G. L. c. 218, § 26, St. 1996, c. 393 (the 1996 Act), not the meaning (or history) of the subsequent amendments to the substantive criminal statute, G. L. c. 268, § 13B, on which the majority focuses. The 1996 Act increased the maximum sentence for a violation of § 13B, which had been five years in State prison, to ten years in State prison. This had the effect not only of making violation of the statute a more serious crime but also of, commensurate with that, taking all acts criminalized by the statute out of the broad grant to District and Boston Municipal Courts of jurisdiction over any crimes punishable by imprisonment in the State prison for not more than five years. The 1996 Act at the same time, however, inserted into § 26 the words “intimidation of a witness or juror under section thirteen B of chapter two hundred and sixty-eight.”
At the time of the 1996 Act, the structure of G. L. c. 268, § 13B, was different from its structure today in a way that makes the “witness or juror” limitation understandable. The version in effect when the 1996 Act was adopted read: “Whoever, directly or in *399 directly, willfully endeavors ... by misrepresentation, intimidation, force or threats of force to influence, impede, obstruct, delay or otherwise interfere with any witness or juror in any stage of a trial or other criminal proceeding or with any person furnishing information to a criminal investigator relating to a violation of a criminal statute of the commonwealth . . . shall be punished (emphasis added). G. L. c. 268, § 13B, as appearing in St. 1990, c. 369.[1] As this court explained contemporaneously in Commonwealth v. Isle, 44 Mass. App. Ct. 226, 228 (1998), ‘“[t]he language of the witness intimidation statute has two distinct branches, separated by the word ‘or.’ The statute may be applied either to witnesses and jurors in ongoing criminal proceedings, or to any person furnishing information to a criminal investigator relating to a crime.”
Given the contemporaneous understanding of the statute to have two branches, it makes perfect sense that the Legislature might have intended precisely the result its language achieved with respect to the now-harsher statute: giving concurrent jurisdiction to the District and Boston Municipal Courts over first branch intimidation cases involving ongoing criminal proceedings, but leaving the Superior Court alone with jurisdiction over cases brought under the other branch of the statute, which at that time included only those involving persons furnishing information to a criminal investigator. This result does not involve jurisdictional gymnastics; it amounts to a commonplace act of legislative line drawing.
Indeed, and perhaps most significantly, there is conclusive evidence that the decision to draw this line was intentional and not some mere accident of careless phrasing. As it was originally introduced, the bill that would become the 1996 Act would actually have inserted the language ‘“section 13B of chapter two hundred and sixty-eight” into G. L. c. 218, § 26, which would have given the District and Boston Municipal Courts concurrent jurisdiction over all crimes under the statute. See 1996 Senate Doc. No. 2264 (introduced March 21, 1996). It was amended during the legislative process to specify that concurrent jurisdiction was conferred only to prosecutions of “intimidation of a witness or juror” under that section.
Consistent with this, the original draft bill would have inserted the language into the portion of the statute that lists crimes only *400 by statutory section and subsection numbers. The final bill, however, inserted the modified language into a different portion of the statute that contains verbal descriptions of covered crimes.[2]
This statutory history, not mere “legislative history,” but the history of the text of the statute itself, clarifies any ambiguity and confirms that the Legislature deliberately limited the scope of District and Boston Municipal court jurisdiction with respect to acts made criminal under G. L. c. 268, § 13B, to the “witnesses and jurors” branch of the statute.
To be sure, G. L. c. 268, § 13B, was amended dramatically in 2006 so that it now covers much more conduct. Under the 2006 amendments, intimidation of many other categories of individuals was criminalized. St. 2006, c. 48, § 3. And in 2010, the statute was amended again to include the category relevant here, “a person who is furthering a civil or criminal proceeding.” St. 2010, c. 256, § 120.
Nonetheless, the Legislature has not amended G. L. c. 218, § 26, to expand the concurrent jurisdiction of the District and Boston Municipal Courts to include cases involving intimidation of anyone other than jurors or witnesses. Of course, it may do so. Perhaps the majority thinks the Legislature should already have done so. But it has not done so, and, unless it violates the State or Federal Constitution — which this limitation obviously does not — it is not for us to ignore or amend legislative language that clearly and correctly expresses the intent of the Legislature.
Today’s majority is not the first to assert that it is not “sensible” or “reasonable” to conclude that the Legislature meant what it said. But the language of the statute, confirmed by the statutory history, leaves no doubt. To the extent the majority attempts to make the line drawn here seem so arbitrary that it is “unreason *401 able to conclude” that this is what the Legislature meant — and in light of the structure of G. L. c. 268, § 13B, at the time of adoption of the 1996 Act, there is little to the majority’s argument — one need look no further for refutation than the portion of G. L. c. 218, § 26, construed in Della Jacova v. Widett, 355 Mass. 266 (1969). The Legislature decided in that portion of the statute that the District Court would be given concurrent jurisdiction with the Superior Court over “forgery of a promissory note, or of an order for money or other property,” but not for forgery of anything else prohibited by G. L. c. 267, § 1, including what was at issue in Della Cova, forgery of an access slip to a safe deposit box. Id. at 273. The line at issue in this case is no less “sensible” or “reason[ablej” than the line drawn there.
In the end, apparently recognizing that the trial judge in fact correctly employed the “literal reading” of the statutory text, the majority concludes that the Legislature’s line drawing here is so “intolerable” that we should depart from what the statute says. Ante at 391.
Whatever our power, if any, under Supreme Judicial Court precedent to ignore plain statutory language that was deliberately enacted and that does not violate the State or Federal Constitution, I simply cannot agree that a difference of opinion whether a subset of one crime over which the Superior Court has jurisdiction may also be heard in the District and Boston Municipal Courts warrants its exercise. Since the trial judge correctly construed the statute, I would affirm her order of dismissal.[3]’[4]

 The 1996 Act itself added grand jury” after the word “trial” in the quoted text, but left this language otherwise intact. See St. 1996, c. 393, § 3.

 It suffices for present purposes to note that the statute contains the two portions I have described. While Borges might admire the ponderous eight-branch taxonomy put forward by the court majority, I find it more confusing than helpful. Cf. Borges, The Analytical Language of John Wilkins, in Other Inquisitions 1937-1952 (Ruth L. Simms trans. University of Texas Press, 1964) (purporting to quote a Chinese encyclopedia, the Celestial Emporium of Benevolent Knowledge, that states that “animals are divided into [a] those that belong to the Emperor, [b] embalmed ones, [c] those that are trained, [d] suckling pigs, [e] mermaids, [f] fabulous ones, [g] stray dogs, [h] those that are included in this classification, [i] those that tremble as if they were mad, [j] innumerable ones, [k] those drawn with a very fine camel’s hah brush, [1] others, [m] those that have just broken a flower vase, [n] those that resemble flies from a distance”).

 The majority correctly holds that the practical concerns it raises cannot trump the language of the statute. Nonetheless, it is worth noting that there is some reason to question the majority’s assertion that properly reading the statute will open the floodgates of collateral attack. Although the record contains no information about the frequency of prosecution in the District or Boston Municipal Courts of cases of intimidation under G. L. c. 268, § 13B, where the victim was not a juror or witness, there appears to be only a single reported appellate decision since the expansion of § 13B in 2006 which involved such a prosecution. The only reported appellate decision for a prosecution for intimidation of anyone other than a witness or a juror under the version of § 13B in place for the decade between the amendment of G. L. c. 218, § 26, in 1996 and the expansion of G. L. c. 268, § 13B, in 2006, was tried in the Superior Court. Commonwealth v. King, 69 Mass. App. Ct. 113 (2007).

 The defendant also argues that there is an error in the docket sheet and mittimus with respect to his sentence on count 2. On count 1, which, as described, was dismissed, the defendant was sentenced to two years in a house of correction, one year to serve, with the balance suspended until April 24, 2019. On *402 count 2, he was sentenced to two years in a house of correction from and after count 1, suspended until April 24, 2019. The docket sheet and the mittimus, however, both state that on count 2 he has been sentenced to two years in a house of correction committed.
After dismissing count 1, the clerk read the following sentence into the record: “The Court has vacated without prejudice your' finding of guilty as to Count 1 and the sentence thereafter of two years, one to serve, the balance suspended until April 24th, 2019. And Counts 2, 3 and 4 stand as imposed on April 30th. Count 2 is two year's in the house of correction, sentence is suspended until April 24th of 2019. Count 3 is six months in the house of corrections suspended until April 24th of 2019 from and after Count 2. And Count 4 is committed to the house of corrections, six months, sentence suspended to from and after Count 3.” The judge responded, “Thank you. All set.” After a discussion between the judge and the clerk about the mittimus, the judge confirmed, “There’s no change in the sentence except that . . . Count 1 was vacated.”
In light of this, the Commonwealth correctly concedes that the docket sheet and mittimus must be amended to reflect that the defendant’s two-year sentence on count 2 should have remained a suspended sentence. I read the majority’s remand order to require this.