NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-441

COMMONWEALTH

vs.

SYED S. SHIRAZI.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Syed S. Shirazi, appeals from his conviction, after a jury-waived trial in the District Court, of breaking and entering a building in the nighttime with the intent to commit a felony, in violation of G. L. c. 266, § 17. We conclude that the defendant's actions of entering through a locked door and briefly taking items provided sufficient evidence of a felonious intent to steal at the time he entered the apartment. Further concluding that the defendant's actions to avoid arrest provided a sufficient basis for the judge to find that he was criminally responsible, we affirm.

1. Standard of review. "When reviewing the denial of a motion for a required finding of not guilty, 'we consider the

evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019), quoting Commonwealth v. Faherty, 93 Mass. App. Ct. 129, 133 (2018). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Chin, 97 Mass. App. Ct. 188, 195 (2020), quoting Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016).

2. Felonious intent. To prove the crime of breaking and entering in the nighttime, the Commonwealth must prove (1) the defendant entered someone else's building; (2) during the nighttime; (3) with the intent to commit a felony; and (4) a person lawfully inside the building was put in fear. See G. L. c. 266, § 17. The defendant contests only the third element, his intent to commit a felony.

"[C]ase law establishes that the intent to commit a felony must be present at the time of the breaking and entering." Commonwealth v. Poff, 56 Mass. App. Ct. 201, 203 (2002). "While '[t]he requisite felonious intent may be inferred from the actual commission of the felonious act,' . . . it can also be inferred 'from the circumstances attending the act, and from the conduct and declarations of the defendant.'" Commonwealth v.

2

Moore, 50 Mass. App. Ct. 730, 733 (2001), quoting Commonwealth v. Perron, 11 Mass. App. Ct. 915, 917 (1981). The complaint "need not specify the intended felony by name, as the identity of the felony is not an element of the crime and the jury can find an intent to commit an unspecified felony." Commonwealth v. Willard, 53 Mass. App. Ct. 650, 653 (2002). See Rogan v. Commonwealth, 415 Mass. 376, 379 (1993).

Here, there was sufficient evidence for the judge to reasonably infer that the defendant had the intent to commit larceny upon entering the victims' apartment. See Commonwealth v. Hill, 57 Mass. App. Ct. 240, 247 (2003) ("A defendant's intent to commit a felonious larceny may be proved in a number of ways"). The evidence showed that the defendant entered the victims' apartment shortly before 4 A.M., and both victims testified that they had locked the door through which the defendant entered. See Commonwealth v. Soares, 51 Mass. App. Ct. 273, 278 (2001), quoting Commonwealth v. Ronchetti, 333 Mass. 78, 81 (1955) ("It has long been held that, when a person makes an illegal entry into a dwelling at night, it may be presumed, 'in the absence of contrary evidence, that his intent is to steal'"); Commonwealth v. Maia, 429 Mass. 585, 587 (1999) ("The mode of entry and the time of entry support a reasonable inference that the defendant intended to commit larceny"). Moreover, the defendant took a bag of mail hanging on the inside

3

door handle without either victim noticing before throwing the bag back into the apartment as he left.  Cf. Commonwealth v. Cabrera, 449 Mass. 825, 828 (2007) ("That [the defendant] actually committed such a felony need not be proved").  Finally, the defendant provided false statements to responding officers about why he was parked outside the victims' apartment.  See Commonwealth v. Graham, 62 Mass. App. Ct. 642, 646 (2004).  Accordingly, the judge could reasonably infer that the defendant had the intent to commit larceny at the time he entered the residence.

3.  Criminal responsibility.  "[A] defendant is not criminally responsible for his actions if, as a result of a mental disease or defect, he lacked the substantial capacity to appreciate the wrongfulness of his conduct or conform his behavior to the requirements of the law."  Commonwealth v. Muller, 477 Mass. 415, 425 (2017).  If the defendant asserts the defense of lack of criminal responsibility, "the Commonwealth bears the burden of proving beyond a reasonable doubt that the defendant was criminally responsible."  Commonwealth v. Lawson, 475 Mass. 806, 811 (2016).  The Commonwealth is not required to call an expert witness to meet its burden but may instead do so "through the inferences arising from the circumstances of the offense, including evidence that the defendant planned the offense, acted on a rational motive, made rational decisions in

4

committing the offense and in avoiding capture, and attempted to conceal the offense or his or her role in the offense." Commonwealth v. Griffin, 475 Mass. 848, 856 (2016), quoting Lawson, supra at 816.

Here, the evidence was sufficient for the trial judge to conclude that the defendant was criminally responsible. At trial, one of the victims testified that, before she called the police, the defendant did not respond to her questions and began to move further into her bedroom despite being asked to leave. Upon calling the police and setting the call to speaker, the victim "noticed that once I continued to say that while I was on the phone with 9-1-1 and he . . . could hear 9-1-1 on speaker, that's when he was like, fine. I'll leave." Later, when asked why he was parked outside the victims' apartment, the defendant provided officers with the false explanation that he was there to drop off and pick up rideshare passengers. Taken in the light most favorable to the Commonwealth, the defendant's attempts to avoid apprehension by leaving the victims' apartment after being alerted to police involvement and subsequently lying to officers was sufficient evidence that the defendant appreciated the wrongfulness of his conduct. See Griffin, 475 Mass. at 857.

The defendant's behavior before and after his arrest supported the inference that the defendant was able to conform

5

his behavior to the requirements of the law.  See Lawson, 475 Mass. at 816 ("The Commonwealth also may prove criminal responsibility through admissible evidence of the defendant's words and conduct before, during, and after the offense, including evidence of malingering").  Here, an onsite officer testified that, before his arrest, the defendant "was quiet.  He seemed reserved.  Not uncommon."  See Commonwealth v. Mcgillivary, 102 Mass. App. Ct. 501, 504 (2023).  After the victims exited their apartment to speak with responding officers, the defendant turned in their direction and asked an officer who they were, a question the officer characterized as an attempt to "probe on where we were in our investigation." Indeed, it was only after his arrest and transfer to the police station, when the defendant was being escorted from his cell to the station's booking area, that he became agitated and made threatening remarks to officers.

The testimony of the defense expert did not render the evidence insufficient.  At trial, the defendant's expert, a licensed mental health professional, opined that the defendant met the criteria for a mental illness with "psychotic features" and that, "at the time of the incident, he was actively symptomatic and not engaged in mental health treatment to mitigate those symptoms."  The expert further opined that, as the defendant "believed that magic was being performed on him,

6

and he wasn't, essentially, able to recognize reality," the defendant "did not believe he was doing anything wrong or criminal."[1]

Although the Commonwealth did not utilize an expert to contradict the defendant's expert, the judge was entitled to discredit the expert testimony.  See Commonwealth v. Brown, 449 Mass. 747, 761 (2007).  Here, there is no reason to disturb the judge's credibility determinations as the defendant's expert relied on a limited basis of information to form his opinion. In fact, the defendant's expert did not review any of the defendant's healthcare records as part of his evaluation, but instead relied on police reports, two meetings with the defendant totaling approximately two hours and thirty minutes, and the defendant's and the defendant's brother's reporting. The judge could discredit the expert's opinion because of its inadequate basis and instead infer from the defendant's actions that he had the substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of law.[2]  Cf. Lawson, 475 Mass. at 817, quoting

---

[1] We recognize that, in his report, the defendant's expert opined that the defendant's mental illness "impaired both his ability to appreciate his actions as wrong/criminal and to conform his behaviors to the requirements of the law."

[2] We further note that the defendant did not make any verbal reference to magic or his purported hallucinations to either the victims or responding officers.  Instead, the defendant told the

Commonwealth v. O'Laughlin, 446 Mass. 188, 204 (2006) (in deciding motion for required finding of not guilty, "a judge . . . must disregard contrary evidence presented by the defendant, including the testimony of a defense expert, unless the contrary evidence demonstrates that the Commonwealth's evidence, or any inference drawn from such evidence, is 'conclusively incorrect'").  In sum, the evidence was sufficient to support a finding that the defendant was criminally responsible beyond a reasonable doubt.

Judgment affirmed.

By the Court (Ditkoff, Singh & Smyth, JJ.[3]),

*Paul Little*

Clerk

Entered:  July 2, 2025.

---

victims that he believed they had invited him to their apartment.

[3] The panelists are listed in order of seniority.